MATAIVA L. McMOORE, FEAO·NU`U
ASIATA, MALIAROSA HUNKIN,
SIMEAMAMAO, NIU SALE, ANASETASIA
IAKOPO, and MATALENA A. ILAOA, Objectors,

v.

MATU`U TIMO and MOTUILIU VESI MATU`U, Claimants.

High Court of American Samoa
Land and Titles Division

LT No. 05-01

January 22, 2003

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, and MAMEA, Associate Judge.

Counsel: For Objectors, S. Salanoa Aumoeualogo
         For Claimants, Arthur Ripley, Jr.

## OPINION AND ORDER

This controversy concerns the validity of an agreement executed by claimant Matu'u Timo ("Matu'u"), on behalf of the Matu'u family of Leone, separating as personal property a residential building to be constructed and owned by claimant Motuiliu Vesi Matu'u ("Motuiliu") on the family's underlying communal land, pursuant to A.S.C.A. §§ 37.1501-.1506. The Court holds that the separation agreement is legally valid.

### **Discussion**

#### A. The Separation Agreement Proceedings

Matu'u and Motuiliu signed the separation agreement on October 30, 2000. It was presented to the Territorial Registrar, who on November 1, 2000, issued the notice of the proposed registration. In accordance with A.S.C.A. § 37.1504, the notice was posted at two public places in the Village of Leone and at the courthouse in the Village of Fagatogo for 30 days. The notice was also published in the *Samoa News*, a newspaper of general circulation in American Samoa, on November 2 and 16, 2000.

During the notice period, Mataivai McMoore ("Mataivai"), Peao Nu'u Asiata ("Peao"), Maliarosa Hunkin ("Maliarosa"), Simeamamao Tagi ("Simeamamao"), Niu Sale ("Niu"), Anasetasia Iakapopo ("Anasetasia"), and Matalena A. Ilaoa ("Matalena") (collectively "the objectors") objected to the registration. On December 6, 2000, the Registrar referred the controversy to the Secretary of Samoan Affairs for dispute resolution proceedings under A.S.C.A. § 43.0302. The Secretary issued the jurisdictional certificate of irreconcilable dispute on May 3, 2001, and the Registrar referred the matter to this Court for judicial resolution on May 30, 2001.

Apparently, the objectors initially focused on their claim to own the land at issue. At trial, however, they conceded that the land was communal land, but they maintained that the land is the communal land of both the Leoso and Matu'u families of Leone, and the holder of the Leoso title, as

the *sa'o* ("senior chief" or "head chief") of the extended Leoso family, was the proper person having *pule* ("power" or "authority") over the land for purposes of entering the contested separation agreement. They also took the position that even if Matu'u had the *pule*, he abused his authority by not first consulting with them as family members and making an arbitrary and capricious decision.

## B. The Land Occupants and Proposed Structure Location

The land underlying and adjacent to the proposed separated structure ("the land") is located in Leone. The particular occupants relevant to the issues include Maliarosa, Simeamamao, Niu, and Anasetasia among the objectors. Vaiausia Matu'u ("Vaiausia"), who is Matu'u's brother and Motuiliu's father, also lives there. Ben Aigamaua ("Ben") leases a house on the land.

Matu'u's and Motuiliu's plan situates the proposed separated structure within a four-sided plot of the land having three sides of 68.10 feet each and one side of 62.12 feet. Located adjacent to this plot are the houses of Vaiausia on the northerly side, Simeamamao on the easterly side, Anasetasia and Maliarosa, with a vehicle repair shop in between, on the southerly side, and Ben on the westerly side. The distance between the easterly and westerly side houses of Simeamamao and Ben is approximately 79 feet. The distance along a northwesterly/southeasterly line between the northerly side house of Vaiausia and the easterly side house of Simeamamoa's house is approximately 44 feet. A 10-foot dirt access road to Maliarosa's house and the repair shop on the southerly side runs in the area between the houses of Vaiausia and Simeamamao. The actual dimensions of the proposed house within the four-sided plot are not in evidence.

## C. *Pule* over the Land

■ Only the *sa'o* of the family owning communal land has the *pule* to enter an agreement pertaining to ownership of a structure on and separated from such land. A.S.C.A. § 37.1502(a).

In this connection, the parties introduced considerable evidence on the ownership of the land and the cognizant *sa'o*, as well as their respective genealogies. The evidence raised factual conflicts. For example, Matu'u's side maintains the land is the Matu'u family's communal land subject to Matu'u's *pule*, and the objectors maintain that the land is the communal land of both the Leoso and Matu'u families subject to the Leoso titleholder's superior *pule*. Further, each side asserts that while its members are true blood members of the Matu'u family, the other side's members lack this attribute. However, though findings on these and similar facts in dispute may be significant for the resolution of other

issues, it is unnecessary to resolve them to determine the issues in this action.

■ The Matu'u family is a branch of the extended Leoso family. The holder of the Leoso title is the *sa'o* of the extended family. However, the parties agree, or at least do not dispute, that without a holder of the presently vacant Leoso title, the holder of the Matu'u title has unquestionable *pule* over the land. The objectors concede that the holder of the Atofau title, another lesser title in the Leoso family, properly authorized Vaiausia to locate on the land. For purposes of this action, we find that the land is the Matu'u family's communal land and that as the holder of the Matu'u family's *sa'o* title, Matu'u had the *pule* to create the separation agreement at issue.

We further find that regardless of the blood unity issues raised by both sides, both Matu'u and Motuiliu, on one hand, and the objectors, on the other hand, are members of the Matu'u family. The objectors are descendants of a Catholic catechist couple who migrated from (Western) Samoa to American Samoa in the early 1900s. Whether it was under the *pule* of the holder of the Matu'u title or the Leoso title at the time, they or their daughter Malia Aloisia, after her marriage to Niu Aumoeualogo, permitted them to reside on and develop the land, at least since the 1930s. This customary assignment of communal land has continued, reaffirmed by subsequent holders of the Matu'u title, including Matu'u, to the present day for the objectors' benefit. The objectors are recognized and accepted Matu'u family members.

Matu'u was born on the land, apparently in Maliarosa's house. Even if Matu'u Petelo, one of the previous Matu'u titleholders of record, and his wife Emelina Selesitina, another daughter of the catechist couple, adopted Matu'u's father, Matu'u Timo, Sr., the title successor to Matu'u Petelo, as the objectors' contend, Matu'u currently holds the Matu'u title. He, along with his brother Vaiausia, who resides on the land, and Motuiliu, Vaisausia's son, who plans to live in his own house there, are also recognized and accepted Matu'u family members.

Matu'u clearly had *pule* to enter the separation agreement with Motuiliu.

D. Matu'u's Decision Was Reasonable

■ A *sa'o* is likened to a trustee of a family's communal land, and in that capacity, he should ordinarily consult with the family, particularly with those members affected, before making any major decision impacting communal land uses. *See Gi v. Temu*, 11 A.S.R.2d 137, 141-42 (Land & Titles Div. 1989); *Talili v. Satele*, 4 A.S.R.2d 23, 27-28 (Land & Titles Div. 1987); *Fairholt v. Aulava*, 1 A.S.R.2d 73, 78 (Land & Titles Div. 1983). This Court has also required a dissident family

217

member to affirmatively allege and prove his good faith effort to settle a family problem with the *sa`o* and family as a condition precedent to bringing an action against the *sa`o*. *Toleafoa v. Tiapula*, 7 A.S.R.2d 117, 123 (Land & Titles Div. 1983); *Fairholt*, 1 A.S.R.2d at 78. The objectors did not make any such allegation was made or offer any such proof.

■ However, lack of a *sa`o's* prior consultation or a dissenter's good faith efforts at settlement may be excused, if constructive dialogue would be a useless gesture. · *Tiamalu v. Scanlan*, 4 A.S.R. 194, 198 (Trial Div. 1961); *Haleck v. Tiamalu*, 3 A.S.R. 380, 388-89 (Trial Div. 1959); *see also Gi*, 11 A.S.R.2d at 142. In this action, the family discord was evident. The objectors adamantly, at least initially, claimed to own the land. On September 11 and October 26, 2001, almost immediately after the judicial resolution referral, the parties professed the need for a court order to keep the peace within their ranks. They also demonstrated antagonistic attitudes towards each other during the trial. No progress towards a constructive settlement of this dispute would have been gained by insistence on settlement discussions within the family as a prerequisite to our decision when in all probability they would have been fruitless.

■ A *sa`o* is obligated to respect long-term occupancy based on a customary assignment of communal land to a family member, as is the area surrounding Motuiliu's proposed house site to the objectors. *Gi*, 11 A.S.R.2d at 141-42; *Talili*, 4 A.S.R.2d at 27. Ordinarily, the assignment is not revocable absent good cause. *Gi*, 11 A.S.R.2d at 142. However, the occupancy right flowing from an assignment is not absolute. *Talili*, 4 A.S.R.2d at 27. A *sa`o* still has authority to make decisions regarding family land, and the court will not interfere with a decision unless it is illegal, arbitrary, capricious, or an abuse of discretion. *Gi*, 11 A.S.R.2d at 142; *Toleafoa*, 7 A.S.R.2d at 118.

The objectors claim that Matu`u decision to enter a separation agreement with Motuiliu was arbitrary, capricious, and an abuse of discretion. They point to the proximity of the plot for Motuiliu's proposed house to the neighboring houses, particularly Simeamamao's existing house, as creating a fire and other safety hazards, upsetting the general well-being of the neighborhood through overcrowding, and blocking the access road to the buildings on the southerly side of Motuiliu's plot. They also express concern over Matu`u's favoritism for his nephew Motuiliu, and their perception that Matu`u plans to oust them from the land and relocate his close relatives there.

The objectors do not make persuasive arguments. The evidence shows that they accepted Vaisausia's presence on the land, and that Matu`u is motivated by Motuiliu's desire to live in a house near his father

Vaisausia's house. Their fear of further inroads onto the land by Matu`u's close relatives is pure speculation under the evidence. The objectors conveniently ignore the likely size of the proposed house. A house the size of the four-sided plot would be enormous by local standards. The plan for the actual house is not known. A house of ample size can be readily situated within the plot so to leave approximately 20 feet between the Simeamamao's house on the easterly side and Ben's house on the westerly side of the plot. The house plan need not interfere with the access road that only serves Maliarosa's house and the repair shop along the southerly side of the plot. A separate road already provides access to Anasetasia's house at the same side.

We may think that Matu`u's decision to grant a separation agreement to Motuiliu for his house does not make the best use of the land. However, we cannot say, and therefore do not find, that his decision was arbitrary, capricious, or an abuse of discretion in the lawful exercise of his *pule* over the Matu`u family's communal land. The strained relationships within the Matu`u family remain a problem that Matu`u as the *sa`o* must solve. We can only enjoin the members of the family from taking abusive action against each other while Matu`u copes with this unfortunate situation.

### Order

1. The separation agreement between Matu`u and Moluiliu, dated October 30, 2000, is legally valid. The Territorial Registrar shall register the agreement.

2. Matu`u and Moluiliu, on one hand, and Mataivai, Peao, Maliarosa Simeamamao Niu, Anasetasia, and Matalena, on the other hand, and their respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, including but not limited to other members of their family, are mutually and permanently enjoined from assaulting, threatening to assault, molesting, annoying, harassing, or in any other manner disturbing the peace of each other.

3. The Clerk of the Court shall have a certified copy of this opinion and order served on the Territorial Registrar.

It is so ordered.